AO 93C (08/18) Warrant by Telephone or Other Reliable Electronic Means

□ Original  □ Dup



CLERK'S OFFICE
A TRUE COPY
Mar 06, 2023
s/ JDH
Deputy Clerk, U.S. District Court
Eastern District of Wisconsin

# UNITED STATES DISTRICT COURT
### for the
### Eastern District of Wisconsin

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br>Devices A through P collectively the "Devices," currently<br>located at the Drug Enforcement Administration Milwaukee<br>District Office, as further described in Attachment A | )<br>)<br>)<br>)<br>)<br>)<br>)    Case No.   23-M-306 (SCD) |

## WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

To:      Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search and seizure of the following person or property located in the     Eastern     District of     Wisconsin
*(identify the person or describe the property to be searched and give its location)*:

See Attachment A.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

See Attachment B.

**YOU ARE COMMANDED** to execute this warrant on or before     3-20-23     *(not to exceed 14 days)*
□ in the daytime 6:00 a.m. to 10:00 p.m.    ☑ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to     Hon. Stephen C. Dries     .
*(United States Magistrate Judge)*

□ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
□ for _____ days *(not to exceed 30)*   □ until, the facts justifying, the later specific date of _____ .

Date and time issued:     3-6-23. 10:00 am                          *Judge's signature*

City and state:    Milwaukee, Wisconsin               Honorable Stephen C. Dries, U.S. Magistrate Judge
                                                         *Printed name and title*

| **Return** | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |

Inventory made in the presence of :

Inventory of the property taken and name(s) of any person(s) seized:

**Certification**

I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

## ATTACHMENT A

1.    The property to be searched is described as follows:

      a.   a blue 2 GB SD card, hereinafter referred to as "**Device A**;"

      b.   a white Apple iPhone, hereinafter referred to as "**Device B**;"

      c.   a silver Apple iPhone, hereinafter referred to as "**Device C**;"

      d.   a Lexar 32 GB flash drive, hereinafter referred to as "**Device D**;"

      e.   a black Motorola Android cell phone, hereinafter referred to as "**Device E**;"

      f.   a black and silver Samsung Android Cell Phone, bearing IMEI: 354308086937132, hereinafter referred to as "**Device F**;"

      g.   a Black and gray WIKO Android cell phone, hereinafter referred to as "**Device G**;"

      h.   a Black LG Android Cell Phone IMEI: 355292-10-314690-2, hereinafter referred to as "**Device H**;"

      i.   a silver LG Android cell phone, hereinafter referred to as "**Device I**;"

      j.   a dark blue AT&T cell phone, hereinafter referred to as "**Device J**;"

      k.   a gray cellular phone, hereinafter referred to as "**Device K**;"

      l.   a black iPhone belonging to Jonte MARSHALL, hereinafter referred to as "**Device L**;"

      m.   a second AT&T cellular phone, hereinafter referred to as "**Device M**;

      n.   a black Alcatel cell phone, hereinafter referred to as "**Device N**; and

      o.   two Apple cellular phones, hereinafter referred to as "**Device O**" and **"Device P."**

1

2.      **Devices A** through **P**, collectively the "**Devices**," are currently at the Drug Enforcement Administration Milwaukee District Office, 4725 West Electric Avenue, West Milwaukee, WI 53219.

This warrant authorizes the forensic examination of the **Devices** for the purpose of identifying the electronically stored information described in Attachment B.

2

**ATTACHMENT B**

1.      All records on the **Devices** described in Attachment A that relate to violations of Title 21, United States Code, Sections 841(a)(1), 843(b) and 846, and Title 18, United States Code, Sections 1956 and 1957, and involve Jonte MARSHALL, Shomari HOOPER, Lemonda WARD, Oscar RAMIREZ-RIVERA, Mirna MATA-TORRES, Daniel RODRIGUEZ-LARA, Richard CHAVEZ, Humberto CORONEL-VEGA, and others not yet identified, including, but not limited to:

    a.  lists of customers and related identifying information;

    b.  types, amounts, and prices of drugs trafficked and money laundered as well as dates, places, and amounts of specific transactions;

    c.  any information related to sources of drugs and money and co-conspirators (including names, addresses, phone numbers, or any other identifying information);

    d.  any information recording schedule or travel;

    e.  all bank records, checks, credit card bills, account information, and other financial records;

    f.  Photographs and/or videos depicting possession of drugs or money;

    g.  Any evidence related to either the ownership, purchase, or possession of drugs, money, or other assets; and

    h.  Records of Internet activity, including browser history, search terms that the user entered into any Internet search engine, and records of user-typed web addresses

2.      Evidence of user attribution showing who used or owned the **Devices** at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history.

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including

1

any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

This warrant authorizes a review of electronic storage media and electronically stored information seized or copied pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, the DEA may deliver a complete copy of the seized or copied electronic data to the custody and control of attorneys for the government and their support staff for their independent review.

2



CLERK'S OFFICE
A TRUE COPY
Mar 06, 2023
s/ JDH
Deputy Clerk, U.S. District Court
Eastern District of Wisconsin

# UNITED STATES DISTRICT COURT
### for the
### Eastern District of Wisconsin

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )   Case No. 23-M-306 (SCD)
)
Devices A through P collectively the "Devices," currently )
located at the Drug Enforcement Administration Milwaukee )
District Office, as further described in Attachment A )

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

See Attachment A.

located in the _____ District of _____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. §§ 841(a)(1) & 846 | Possession with the intent to distribute, and conspiracy to possess with the intent to distribute controlled substances. |
| 18 U.S.C. §§ 1956 &1957 | Money laundering. |

The application is based on these facts:

See Attached Affidavit.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

MATTHEW COOPER (Affiliate) Digitally signed by MATTHEW COOPER (Affiliate)
Date: 2023.03.02 18:26:10 -06'00'

*Applicant's signature*

DEA TFO Matthew Cooper
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
telephone *(specify reliable electronic means)*.

Date: 3-6-23

*Judge's signature*

City and state: Milwaukee, Wisconsin    Honorable Stephen C. Dries, U.S. Magistrate Judge
*Printed name and title*

AFFIDAVIT IN SUPPORT OF
AN APPLICATION FOR SEARCH WARRANT

I, Matthew Cooper being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1.      I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of property—electronic devices—which are currently in law enforcement possession, and the extraction from that property of electronically stored information described in Attachment B.

2.      I am employed as a Detective with the Milwaukee Police Department and have been a law enforcement officer for over 25 years.  I have been a Detective for over 19 years and have been assigned to conduct narcotics investigations for over 18 years.  I was previously assigned to the Vice Control Division (Narcotics) as a Police Officer for over 2 years.  I have been assigned to the High Intensity Drug Trafficking Area (HIDTA) for over 14 years.   I am also a Task Force Officer with the United States Department of Justice, Drug Enforcement Administration (DEA), and have been since October 2008.  As such, I am an investigative or law enforcement officer of the United States within the meaning of Section 2510(7) of Title 18, United States Code, in that I am empowered by law to conduct investigations of and to make arrests for federal felony offenses.

3.      I have participated in numerous complex narcotics investigations which involved violations of state and federal controlled substances laws and money laundering laws including Title 21, United States Code, Sections 841(a)(1), 843(b) and 846, and Title 18, United States Code, Sections 1956 and 1957, and other related offenses. I have had both formal training and have

1

participated in numerous complex drug trafficking investigations, including ones using wiretaps.

More specifically, my training and experience includes the following:

a.  I have utilized informants to investigate drug trafficking. Through informant interviews, and extensive debriefings of individuals involved in drug trafficking, I have learned about the manner in which individuals and organizations distribute controlled substances in Wisconsin and throughout the United States;

b.  I have also relied upon informants to obtain controlled substances from dealers and have made undercover purchases of controlled substances;

c.  I have extensive experience conducting street surveillance of individuals engaged in drug trafficking. I have participated in the execution of numerous search warrants where controlled substances, drug paraphernalia, and drug trafficking records were seized;

d.  I am familiar with the appearance and street names of various drugs, including marijuana, heroin, cocaine, cocaine base (unless otherwise noted, all references to crack cocaine in this affidavit is cocaine base in the form of crack cocaine), ecstasy, fentanyl, and methamphetamine. I am familiar with the methods used by drug dealers to package and prepare controlled substances for sale. I know the street values of different quantities of the various controlled substances;

e.  I am familiar with the language utilized over the telephone to discuss drug trafficking, and know that the language is often limited, guarded, and coded;

f.  I know that drug traffickers often use electronic equipment and wireless and landline telephones to conduct drug trafficking operations;

g.  I know that drug traffickers commonly have in their possession, and at their residences and other locations where they exercise dominion and control, firearms, ammunition, and records or receipts pertaining to such;

h.  I have been assigned to court-authorized wiretaps and have been trained to operate the equipment utilized to conduct such operations;

i.  I know that drug traffickers often put their telephones in nominee names in order to distance themselves from telephones that are utilized to facilitate drug trafficking; and

j.  I know that drug traffickers often use drug proceeds to purchase assets such as vehicles, property, and jewelry. I also know that drug traffickers often use

2

nominees to purchase and/or title these assets in order to avoid scrutiny from law enforcement officials.

4.     Based upon my training and experience, I know that computer hardware and software may be important to a criminal investigation in two distinct and important respects: (1) the objects themselves may be instrumentalities, fruits, or evidence of crime, and/or (2) the objects may have been used to collect and store information about crimes (in the form of electronic data). Rule 41 of the Federal Rules of Criminal Procedure permits the government to search and seize computer hardware and software that are (1) instrumentalities, fruits, or evidence of crime, or (2) storage devices for information about crime.

5.     I have participated in numerous narcotics and firearms trafficking investigations that involved the seizure of computers, cellular phones, cameras, and other digital storage devices, and the subsequent analysis of electronic data stored within these computers, cellular phones, cameras, and other digital storage devices. On many occasions, this electronic data has provided evidence of the crimes being investigated and corroborated information already known or suspected by law enforcement.

6.     I am currently participating in an investigation of fentanyl and cocaine trafficking occurring in the Milwaukee, Wisconsin area. I am familiar with the facts and circumstances regarding this investigation as a result of my personal participation in this investigation, and my review of: (a) reports prepared by, and information obtained from, other federal, state, and local law enforcement agents and officers, all of whom I believe to be truthful and reliable; and (b)

3

information obtained from a cooperating citizen witness whose reliability is established herein.[1] This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

7.     Based on the facts set forth in this affidavit, there is probable cause to believe that violations of Title 21, United States Code, Sections 841(a)(1), 843(b) and 846 have been committed, are being committed, and will be committed by Jonte MARSHALL, Shomari HOOPER, Lemonda WARD, Oscar RAMIREZ-RIVERA, Mirna MATA-TORRES, Daniel RODRIGUEZ-LARA, Richard CHAVEZ, Humberto CORONEL-VEGA and others not yet identified.  There is also probable cause to believe that the information described in Attachment B will constitute evidence of these criminal violations and will lead to the identification of individuals who are engaged in the commission of these offenses as well as other evidence related to the commission of these offenses.

8.     The Court has jurisdiction to issue the proposed warrant because it is a "court of competent jurisdiction" as defined in 18 U.S.C. § 2711.  Specifically, the Court is a district court of the United States that has jurisdiction over the offenses being investigated; *see* 18 U.S.C.     § 2711(3)(A)(i).

<u>**IDENTIFICATION OF THE DEVICES TO BE EXAMINED**</u>

9.     The property to be searched is described as follows:

    a.  a blue 2 GB SD card, hereinafter referred to as "**Device A**;"

---

[1] Throughout this affidavit, reference will be made to case agents.  Case agents are those federal, state, and local law enforcement officers who have directly participated in this investigation, and with whom your affiant has had regular contact regarding this investigation.

4

b. a white Apple iPhone, hereinafter referred to as "**Device B**;"

c. a silver Apple iPhone, hereinafter referred to as "**Device C**;"

d. a Lexar 32 GB flash drive, hereinafter referred to as "**Device D**;"

e. a black Motorola Android cell phone, hereinafter referred to as "**Device E**;"

f. a black and silver Samsung Android Cell Phone, bearing IMEI: 354308086937132, hereinafter referred to as "**Device F**;"

g. a Black and gray WIKO Android cell phone, hereinafter referred to as "**Device G**;"

h. a Black LG Android Cell Phone IMEI: 355292-10-314690-2, hereinafter referred to as "**Device H**;"

i. a silver LG Android cell phone, hereinafter referred to as "**Device I**;"

j. a dark blue AT&T cell phone, hereinafter referred to as "**Device J**;"

k. a gray cellular phone, hereinafter referred to as "**Device K**;"

l. a black iPhone belonging to Jonte MARSHALL, hereinafter referred to as "**Device L**;"

m. a second AT&T cellular phone, hereinafter referred to as "**Device M**;

n. a black Alcatel cell phone, hereinafter referred to as "**Device N**; and

o. two Apple cellular phones, hereinafter referred to as "**Device O**" and **"Device P."**

10. **Devices A through P** collectively the "**Devices**," are currently located at the Drug Enforcement Administration Milwaukee District Office, 4725 West Electric Avenue, West Milwaukee, WI 53219.

5

11.     The applied-for warrant would authorize the forensic examination of the **Devices** for the purpose of identifying electronically stored data more particularly described in Attachment B.

**<u>PROBABLE CAUSE</u>**

12.     In April 2019, case agents met with a confidential source, hereinafter referred to as "CS-1."[2]    CS-1 provided information regarding suspects involved in drug trafficking in the Milwaukee, Wisconsin area.  CS-1 identified Jonte MARSHALL as a large-scale distributor of heroin, cocaine, and marijuana in the Milwaukee area.  CS-1 identified one of MARSHALL's phone numbers as (414) 779-1998.  CS-1 identified MARSHALL's residence as a duplex at 1929 and 1931 South 97th Street, West Allis, Wisconsin.  CS-1 stated this residence is a duplex owned by MARSHALL.  MARSHALL lives in the lower unit of the duplex and stores drugs in the upper unit of the duplex.  CS-1 stated that MARSHALL carries a pistol on his person at all times.

13.     CS-1 believed that Jonte MARSHALL receives at least some of his drugs through the mail.  On one occasion, CS-1 was at the residence of MARSHALL's associate, Corey Vance, when a third subject was at the residence waiting to receive a parcel believed to contain drugs.  CS-1 left the residence before the parcel arrived.  CS-1 stated MARSHALL owns a residence in Arizona and travels to Arizona frequently to conduct drug trafficking activities.

---

[2] Case agents believe CS-1 is a reliable person because CS-1 has provided information which law enforcement has been able to corroborate through independent investigations, CS-1 has provided statements against CS-1's own penal interests, and CS-1 has conducted controlled buys of narcotics for law enforcement.  CS-1's adult criminal history includes two misdemeanor convictions and one felony conviction.  CS-1 is cooperating in exchange for consideration on a pending felony arrest.  Criminal charges were subsequently declined based on CS-1's cooperation.  CS-1 was paid a total of $3,000 on four separate occasions for providing information on multiple felony offenses occurring in the Milwaukee area.

6

14.    CS-1 identified another subject involved in drug trafficking with Jonte MARSHALL as Corey Vance.  CS-1 stated Vance distributes large amounts of heroin, cocaine, and marijuana for MARSHALL.  CS-1 identified Vance's residence as 5908 North 69th Street, Milwaukee, Wisconsin.  CS-1 stated Vance lives at this residence with his mother.  CS-1 stated that within several days of the interview CS-1 had been inside this residence and seen five different handguns.  CS-1 further stated that Vance always carries a handgun in his waistband.  CS-1 stated Vance also stores drugs at this residence and observed about 100 grams of heroin in the residence about two weeks earlier.

15.    CS-1 stated that when CS-1 would purchase heroin from Vance and MARSHALL, a girlfriend of MARSHALL's would arrive at the residence with the heroin.  Vance would leave the residence with the money, meet with the unidentified girlfriend of MARSHALL, then return to the residence with the heroin.  Despite CS-1's belief that MARSHALL and VANCE distribute heroin; all of the suspected "heroin" seized to date has tested positive for fentanyl rather than heroin.

### *Controlled Purchases of Drugs from the Jonte MARSHALL DTO*

16.    On April 18, 2019, CS-1 placed a recorded and monitored call to Corey Vance.  Vance answered the phone.  CS-1 asked Vance about purchasing "50" the following day.  CS-1 asked Vance if the transaction could take place at 11:00 a.m. or 12:00 p.m.  Vance agreed and the call ended.  Telephone records show that a short time later Vance called Jonte MARSHALL at (414) 779-1998.  Case agents believe Vance called MARSHALL to relay CS-1's request to purchase drugs.

7

17.     On April 19, 2019, CS-1 exchanged a series of text messages with Vance. That morning, case agents established surveillance at the residence of Jonte MARSHALL, and at the residence of Corey Vance. CS-1 was given $3,000 in pre-recorded buy money and an audio recording and monitoring device. CS-1 received a text message from Vance which told CS-1 to come to Vance's residence to complete the transaction. At about the same time, case agents observed Jonte MARSHALL walk from the rear of his residence. MARSHALL entered the driver's seat of a black Cadillac Escalade and backed out of the driveway. The vehicle was not followed.

18.     CS-1 arrived at Vance's residence and went inside. A short time later, case agents observed MARSHALL's black Cadillac Escalade arrive and park near Vance's residence. A few minutes later, Vance exited his residence and entered the front passenger seat of the Escalade. Vance exited the Escalade about 20 seconds later and re-entered his residence. The Escalade then departed the area followed by several surveillance units.

19.     A short time later, CS-1 exited Vance's residence. CS-1 was followed directly to a predetermined meet location. Upon arrival, CS-1 turned over to case agents a clear plastic, knotted baggie containing a tan, chunky substance suspected to be fentanyl. CS-1 stated that upon entering the residence, CS-1 met with Vance and handed the pre-recorded buy money to Vance. Vance placed a call and informed the person on the other end of the phone that CS-1 was "good." CS-1 waited in the residence for about 20 minutes with Vance. CS-1 further stated that at one-point Vance received a text message and exited the residence. Less than a minute later, Vance returned to the residence and went into a back bedroom. A short time later, Vance returned to the living room and handed CS-1 the baggie containing the tan, chunky substance. Vance told CS-1

8

he had weighed the baggie and it weighed 50 grams. CS-1 then left the residence and returned to the predetermined meet location. The suspected fentanyl later tested positive for fentanyl with a total weight of 51.62 grams.

20. Surveillance followed the Cadillac Escalade to a local BMO Harris Bank. MARSHALL exited the Escalade and entered the bank. Case agents later obtained surveillance video from the BMO Harris Bank branch. A review of the video showed MARSHALL enter the bank and meet with a bank teller. MARSHALL removed a large amount of United States currency from his pocket and deposited it into an unknown bank account.

21. Case agents have made ten additional controlled purchases of fentanyl from members of the Jonte MARSHALL DTO. From May 8, 2019, through September 26, 2019, CS-1 purchased an additional 450 grams of fentanyl from Corey Vance and Jonte MARSHALL. MARSHALL, using (414) 779-1998, was in regular phone contact with Vance surrounding each of these transactions. During surveillance of several of the controlled buys, case agents observed Lemonda WARD deliver the fentanyl to Corey Vance prior to Vance delivering it to CS-1. Therefore, case agents believe Lemonda WARD is a courier for the MARSHALL DTO. On October 11, 2019, Corey Vance died of natural causes. CS-1 attended a funeral service for Vance and met with Jonte MARSHALL. MARSHALL directed CS-1 to start purchasing fentanyl from Shomari HOOPER. CS-1 agreed.

22. In November 2019, CS-1 purchased approximately 50 grams of fentanyl from Shomari HOOPER at HOOPER's residence. In February 2020, CS-1 purchased approximately 50 grams of fentanyl from HOOPER at HOOPER's residence. In April 2020, CS-1 purchased approximately 100 grams of fentanyl from HOOPER at HOOPER's residence. Lemonda WARD

9

delivered the fentanyl to HOOPER prior to HOOPER's transaction with CS-1. In June 2020, CS-1 purchased approximately 100 grams of fentanyl from HOOPER at HOOPER's residence. In November 2020, the CS purchased approximately 100 grams of fentanyl from HOOPER at HOOPER's residence. During the controlled buy, the CS observed approximately 300 grams of fentanyl in HOOPER's residence along with blenders commonly used to prepare fentanyl for distribution.

23.    During each of the controlled buys from HOOPER, CS-1 was equipped with an audio monitoring device. Telephone records show that Jonte MARSHALL, using (414) 779-1998, was in contact with Shomari HOOPER and Lemonda WARD in the days surrounding each of the controlled buys. During the April controlled buy, telephone records showed that MARSHALL, using (414) 779-1998, was coordinating the meeting between HOOPER and WARD. Prior court-authorized positional information for MARSHALL's cell phone, (414) 779-1998, also showed that MARSHALL was at HOOPER's residence several hours after the February controlled buy from HOOPER. Case agents believe MARSHALL met with HOOPER to pick up the money from the controlled buy. A review of remote surveillance video from a camera installed in the alley behind HOOPER's residence also showed MARSHALL and WARD meeting with HOOPER numerous times for short durations. These meetings are consistent with the delivery of drugs or the proceeds of drug sales.

### *Jonte MARSHALL Purchases of Cutting Agents and Presses*

24.    On March 20, 2020, a United States Postal Inspector was conducting routine parcel screening at the United States Postal Service ("USPS") Root River Post Office, located at 11015 W Oklahoma Avenue, Milwaukee, Wisconsin 53227, when the following parcel was found to be

10

suspicious in nature: USPS Priority Mail parcel 9405503699300286995365. The parcel was approximately an 11.25" x 8.75" x 6" USPS medium flat rate Priority Mail parcel weighing approximately 5 lbs. 8 oz. The parcel's label indicated it was from "The Variety Shoppe, PO Box 315, Dawsonville GA 30534-0006." The parcel bore a typewritten label addressed to "Jonte Marshall, 1929 S 97th St, West Allis WI 53227-1430." The parcel was postmarked on March 18, 2020, in Dawsonville, Georgia 30534. The postage paid was $15.05.

25. The sender of the parcel, The Variety Shoppe, has a website, www.varietyshoppe.com, showing a number of products they sell including digital scales, detox products, sexual stimulants, room deodorizers, and "powdered vitamins." Their homepage shows the "top selling powdered vitamin supplements" as mannitol, inositol, niacinamide, lactose, and VitaBlend. Case agents are aware mannitol, inositol, and lactose are common cutting agents added to narcotics prior to distribution. The website further states, "*our customers receive an e-mail after the order is shipped containing an estimated time of arrival and a tracking number for the order.*"

26. A check of USPS business records showed that since June 2018 the destination address of the parcel, 1929 South 97th Street, has received at least 35 packages originating from Dawsonville, Georgia. At least 15 of these packages have all been from the same sender's address as the parcel sent on March 18, 2020, and have all shown the same approximate weight as this parcel. The USPS business records were not kept for the remaining 20 parcels. Postal Inspectors were unable to confirm the sender's name and address of these parcels but suspect they all originated from the Variety Shoppe due to the type of USPS shipment used, the originating Post Office, and the weight of the parcels being the same as this parcel.

11

27.     On March 20, 2020, case agents applied for and received a federal sneak and peek search warrant for the parcel.  The search warrant was issued by United States Magistrate Judge Nancy Joseph in the Eastern District of Wisconsin.  Upon executing the search warrant on the parcel on March 20, 2020, case agents discovered the parcel contained two containers of Seven Stars Superior Lactose in powder form.  The label for each container showed they each contained "2.2 lbs./1000 grams" of lactose.  The parcel also contained a packing slip which showed the order was taken by The Variety Shoppe from Jonte MARSHALL with an email address of ldtr_black@yahoo.com.[3]  Case agents repackaged the parcel with all its original contents and placed it back into the mail stream. The parcel was delivered on March 21, 2020, at approximately 10:41 a.m.

28.     On June 11, 2020, a United States Postal Inspector was reviewing United States Postal Service ("USPS") business records when a Priority Mail parcel was found to be suspicious.  The postal records indicated that a parcel had been shipped to "Jon Marshall" at 1929 South 97th Street, West Allis, Wisconsin.  The Postal Inspector examined the USPS business records and open-source website information and determined that the parcel had been shipped from a company named "Kief Presses."  A review of the website for Kief Presses, http://www.kiefpresses.com, revealed that the company manufactured and sold four different presses, which the company described as "pollen" presses.  I am aware, based on my training and experience, that presses of this type are commonly used to compress powdered narcotics, such as

---

[3] Case agents believe this order contained a typo of MARSHALL's actual email address where the first letter, "i" was changed to an "l."

12

fentanyl, heroin, and cocaine, into compressed "bricks" after they have been diluted with cutting agents.

29.     A review of postal records revealed that the parcel shipped to Jonte MARSHALL from Kief Presses was being tracked from Jonte MARSHALL's residence at 8320 West Mourning Dove Court, Mequon, Wisconsin. An Administrative Subpoena previously served on Charter Communications revealed that the internet service at that residence was subscribed to Jonte MARSHALL with an email address of idtr_black@yahoo.com.  That same day, MARSHALL was also due to receive another parcel from The Variety Shoppe, which case agents believe, based on the investigation to date, contained more lactose.  That package had also been shipped to 1929 South 97th Street, West Allis, Wisconsin.  Both parcels were delivered on Friday, June 12, 2020.  Case agents believe that MARSHALL had purchased a press and additional quantities of a cutting agent in order to manufacture additional quantities of fentanyl, heroin, and/or cocaine, and to press those powders into "brick" form.

***Seizures of Bulk United States Currency from***

***Jonte MARSHALL and Oscar RAMIREZ-RIVERA***

30.     On July 20, 2020, the Honorable Judge Nancy Joseph, United States Magistrate Judge in the Eastern District of Wisconsin, signed warrants authorizing the search of (414) 779-1998, the phone used by Jonte MARSHALL, and (602) 703-0618, the phone used by Oscar RAMIREZ-RIVERA, a suspected source of supply of fentanyl to the MARSHALL DTO.  More specifically, the warrants directed AT&T and T-Mobile to provide information about the location of (414) 779-1998 and Target Cell Phone D for a period of 45 days.

13

31. Case agents monitoring the location of Target Cell Phone D observed that RAMIREZ-RIVERA had been primarily in the Phoenix, Arizona area until July 31, 2020. On July 31, 2020, RAMIREZ-RIVERA travelled from Phoenix to Los Angeles, California. From July 31, 2020, until August 5, 2020, RAMIREZ-RIVERA remained in California and frequented the areas of Palmdale, California; Llano, California; and San Bernardino, California. On August 5, 2020, RAMIREZ-RIVERA returned to the Phoenix area. On Thursday, August 6, 2020, at 10:20 p.m., court-authorized positional information for Target Cell Phone D indicated that RAMIREZ-RIVERA was at the airport in Milwaukee, Wisconsin. RAMIREZ-RIVERA remained in the Milwaukee area and his phone was frequently observed at the same locations as MARSHALL's cellular phone.

32. On August 12, 2020, at 8:50 a.m., court-authorized positional information for Target Cell Phone D indicated that RAMIREZ-RIVERA's cellular phone was in close proximity to 7836 North Faulkner Road, Milwaukee, Wisconsin. This is the location of Schweiger and Baumann Trucking LLC, a business owned by Jonte MARSHALL. At 9:01 a.m., court-authorized positional information for (414) 779-1998, MARSHALL's cellular phone, indicated MARSHALL was also in that area. At 9:20 a.m. and 9:35 a.m., Target Cell Phone D was located in close proximity to MARSHALL's residence at 8320 West Mourning Dove Court, Mequon, Wisconsin. At 9:18 a.m. and 9:36 a.m., (414) 779-1998 remained near 7836 North Faulkner Road. At 9:50 a.m., Target Cell Phone D was again in the area of 7836 North Faulkner Road. At 10:05 a.m., Target Cell Phone D was located in the area of North 76th Street and West Brown Deer Road which is between MARSHALL's residence and 7836 North Faulkner Road. At 10:07 a.m., (414) 779-1998 was located near his residence. At 10:20 a.m., Target Cell Phone D was located near

14

North 76th Street and West Bradley Road which is approximately 13 blocks east of 7836 North Faulkner Road.

33. At 10:25 a.m., case agents began to conduct surveillance at 7836 North Faulkner Road, Milwaukee, Wisconsin. At 10:25 a.m., case agents observed Jonte MARSHALL's black 2018 Cadillac Escalade, bearing Wisconsin license plates AGE-4015, parked in the southeast corner of the rear parking lot at that location. These license plates list to Blackout Investments LLC at 7836 North Faulkner Road, Milwaukee, Wisconsin. Jonte MARSHALL is the registered agent for Blackout Investments LLC. Case agents also observed Jonte MARSHALL standing in the rear parking lot at that location. MARSHALL appeared to be taking a picture of a vehicle in a rear parking area. The vehicle could not be seen as it was parked between other large vehicles. Court-authorized positional information also confirmed that (414) 779-1998 was at that location at 10:25 a.m. Case agents established surveillance where they could observe vehicles coming and going from the business, but could not observe most of the rear parking lot.

34. At 10:35 a.m., court-authorized positional information for Target Cell Phone D indicated it was located near 7836 North Faulkner Road. At 10:39 a.m., case agents observed a gray 2016 Jeep Grand Cherokee, bearing California license plates 8ADB961, drive from the rear parking lot and turn south on North Faulkner Road. These license plates list to Carlos ESTRADA at 13841 Beech Street, Victorville, California 92392. This vehicle was not followed. At 10:41 a.m., (414) 779-1998 was still located near 7836 North Faulkner Road. At 10:48 a.m., case agents observed Jonte MARSHALL walk across the rear parking lot and enter the driver's seat of his Cadillac Escalade. MARSHALL drove the Escalade out of the parking lot and turned north on

15

North Faulkner Road. Case agents attempted to locate MARSHALL's vehicle, but were unsuccessful.

35. At 10:49 a.m., court-authorized positional information for Target Cell Phone D indicated it was located near 7300 West Good Hope Road, Milwaukee, Wisconsin. Case agents went to that location in an attempt to locate RAMIREZ-RIVERA. At 10:58 a.m., case agents observed a commercial car carrier in the parking lot at approximately 7208 North 76th Street, Milwaukee, Wisconsin. Case agents observed a gray Jeep on the upper cargo area of the car carrier and confirmed that the license plate on the Jeep was the same license plate of the Jeep observed leaving 7836 North Faulkner Road. Case agents were unable to locate RAMIREZ-RIVERA at that location and then began to conduct surveillance of the car carrier and Jeep.

36. Case agents maintained surveillance of the car carrier until it entered Interstate 94 eastbound toward Chicago, Illinois. The car carrier was followed into Racine County, Wisconsin. At 12:34 p.m., a Wisconsin State Patrol Inspector conducted a traffic stop of the car carrier for a safety inspection. After the initial traffic stop, the car carrier was relocated to the Racine Safety Weight Enforcement Facility for an inspection. The driver of the car carrier stated he had picked up all three of the vehicles on the car carrier from private parties in the Milwaukee area. The driver had shipping information on his phone which indicated the Jeep Grand Cherokee was being transported to Hesperia, California. The Inspector asked the driver to off-load the Jeep and one other vehicle so he could confirm the VIN numbers on each vehicle. The driver agreed to do so. A Wisconsin State Patrol Trooper then arrived on scene to assist the Inspector. The Trooper deployed his K-9 partner around the Jeep and the other vehicle and the K-9 alerted to the odor of controlled substances emanating from the Jeep. During a search of the Jeep, the Inspector and

16

Trooper located an electronically-controlled compartment behind the rear passenger seat. The compartment was observed to contain rubber-banded United States currency. The Inspector and Trooper dismantled the compartment and removed a large amount of United States currency. An official count later revealed that $508,140 in United States currency was located in the compartment.

37. On August 12, 2020, the DEA Detroit Field Division contacted Milwaukee case agents regarding a telephone deconfliction. The Detroit agents had received information from a source of information (SOI) related to the seizure of the currency from the Jeep Cherokee in Wisconsin and a possible future shipment of currency from Milwaukee. The SOI provided Detroit agents with specific information that Jonte MARSHALL and Oscar RAMIREZ-RIVERA planned to ship a second vehicle from Milwaukee on August 13, 2020. The SOI provided agents with the vehicle pickup location and a description of the vehicle.

38. On August 13, 2020, Milwaukee case agents established surveillance at the vehicle pickup location, the same business owned by MARSHALL, located at 7836 North Faulkner Road, Milwaukee, Wisconsin. At 8:36 a.m., case agents observed a white Ford Expedition parked in the rear of the building. At 12:39 p.m., case agents observed the black Cadillac Escalade, bearing Wisconsin license plate AGE-3015, driven by MARSHALL, arrive at the business and park in the rear. At 12:41 p.m., court-authorized positional information for (414) 779-1998 revealed that the phone was in close proximity to 7836 North Faulkner Road, Milwaukee, Wisconsin. At 12:46 p.m., MARSHALL left the business northbound in the black Escalade. At 2:17 p.m., case agents observed a gray GMC Acadia, bearing Minnesota license plates DGA140, driven by a Hispanic male later identified as RAMIREZ-RIVERA arrive at the business and park in the rear. These

17

license plates list to PV Holding Corporation, 2240 Airport Lane, Minneapolis, Minnesota 55450. PV Holding Corporation is a holding company for Avis and Budget rental cars. At 2:19 p.m., court-authorized positional information for Target Cell Phone B revealed that the phone was in close proximity to 7836 North Faulkner Road, Milwaukee, Wisconsin.

39.    At 5:41 p.m., case agents observed a commercial car carrier arrive at the business and park in front on North Faulkner Road. The company name "Gigi Line" was printed on the side of the truck. Shortly thereafter, RAMIREZ-RIVERA drove a white 2005 Ford Expedition, bearing Wisconsin license plates AFH-7134, from the rear of the business and turned it over to the driver of the car carrier. These license plates list to Jonte MARSHALL at 1929 South 97th Street, West Allis, Wisconsin. This vehicle matched the description of the vehicle previously provided by the Detroit SOI. The driver loaded the Ford Expedition onto the car carrier while RAMIREZ-RIVERA watched.

40.    Agents conducted surveillance of the car carrier for approximately three hours as it picked up additional cars in West Bend, Wisconsin. After leaving that area, case agents followed the car carrier until it entered Interstate 94 toward Chicago, Illinois. At 9:43 p.m., as the car carrier was in Racine, County, Wisconsin, a traffic stop was conducted by the Wisconsin State Patrol. During the traffic stop and inspection, a Racine County Deputy Sheriff deployed his K-9, which gave a positive alert to the odor of controlled substances in the Ford Expedition. During a search of the vehicle, case agents located a large amount of US Currency concealed in a natural void in the driver's side rear quarter panel. An official count later determined that $100,020 had been seized from the vehicle.

18

*Seizure of Fentanyl and Cocaine en Route to MARSHALL DTO, Arrest of Richard CHAVEZ*

*and Daniel RODRIGUEZ-LARA, and Identification of Humberto CORONEL-VEGA*

41. On June 13, 2021, at 10:27 p.m., a Kansas Highway Patrol Trooper was monitoring traffic on US Highway 54 in Seward County, Kansas. The Trooper observed a 2022 Kenworth Semi Tractor, bearing Illinois license plate P1048444, towing a 2020 Sun Valley Car Carrier trailer, bearing Illinois license plate 717079ST, eastbound on US Highway 54. The Trooper conducted a traffic stop of the car hauler for a commercial vehicle inspection. Upon inspecting the vehicles on the car carrier, the Trooper located a white 2013 Nissan Cube that had been shipped from California and was destined for Milwaukee, Wisconsin. A subsequent search of the Nissan Cube revealed electronically controlled compartments beneath both of the vehicle's front floorboards. These compartments were found to contain 16 kilogram-shaped packages of a substance that tested positive for fentanyl and 14 packages of a substance that tested positive for cocaine. Case agents believe this fentanyl and cocaine were being transported to Milwaukee, Wisconsin to be distributed in the Eastern District of Wisconsin. Case agents removed the narcotics from the vehicle and arranged for the vehicle to be transported to Wisconsin.

42. On June 14, 2021, the Honorable Nancy Joseph, United States Magistrate Judge in the Eastern District of Wisconsin, signed a search warrant authorizing the search of the AT&T cellular phone assigned phone number (213) 379-2357. This phone had been utilized to arrange the shipment of the Nissan Cube. On June 16, 2021, at 7:45 a.m., court-authorized positional information for (213) 379-2357 showed that the phone was in close proximity to The Chalet Motel of Mequon at 10401 North Port Washington Road, Mequon, Wisconsin. Case agents responded

19

to that location and observed a black 2016 Nissan Juke, bearing California license plates 8ROZ059.

43. On June 16, 2021, case agents met with the driver of the commercial car carrier in the Eastern District of Wisconsin. The concealed compartments in the Nissan Cube were filled with facsimile kilogram-shaped packages similar to those seized in Kansas. The Nissan Cube was equipped with tracking devices and an alarm which would alert case agents when the concealed compartments were opened. Case agents then conducted a controlled delivery of the Nissan Cube to its delivery destination.

44. After the car carrier arrived at the delivery location, the driver contacted (213) 379-2357 via text message and advised that the vehicle had arrived. The user of (213) 379-2357 stated his "friend" would arrive shortly. Case agents observed three Hispanic males walk across the Chalet Motel parking lot and enter the Nissan Juke. These subjects were later identified as Daniel RODRIGUEZ-LARA, Richard CHAVEZ, and Humberto CORONEL-VEGA. The Nissan Juke, driven by CHAVEZ, was followed from the motel and eventually arrived at the delivery location. Daniel RODRIGUEZ-LARA exited the Nissan Juke and received the Nissan Cube from the truck driver. RODRIGUEZ-LARA drove to a nearby Walmart and parked the Cube in the parking lot. He then entered the Nissan Juke and the vehicle drove out of the area.

45. Case agents maintained surveillance of the Nissan Juke, CHAVEZ, RODRIGUEZ-LARA, and CORONEL-VEGA, for approximately six hours at which time case agents lost sight of the vehicle and surveillance was terminated. Case agents maintained constant visual surveillance of the Nissan Cube and no one returned to the vehicle. On June 16, 2021, at approximately 10:15 p.m., case agents maintaining surveillance of the Nissan Cube at Walmart

20

observed a Yellow Cab taxi pull into the parking lot and stop near the Cube. RODRIGUEZ-LARA exited the taxi and entered the driver's seat of the Cube. Case agents followed the Cube to Rick's Car Care, 6121 West Mequon Road, Mequon, Wisconsin. RODRIGUEZ-LARA parked the vehicle in the parking lot and re-entered the same taxi, which had also arrived at the location. The taxi was followed to the Days Inn & Suites, 1840 North 6th Street, Milwaukee, Wisconsin. RODRIGUEZ-LARA exited the taxi and entered the hotel. Approximately 10 minutes later, RODRIGUEZ-LARA exited the hotel with CORONEL-VEGA. They walked around the neighborhood for approximately 15 minutes before returning to the hotel. Surveillance video later showed RODRIGUEZ-LARA and CORONEL-VEGA depart the hotel on June 17, 2021, at 12:12 a.m.

46.     At approximately 12:50 a.m., case agents observed a 2006 Range Rover, bearing California license plates 6NNH477, enter the parking lot of Rick's Car Care. Case agents observed two subjects enter the Nissan Cube and drive the vehicle out of the area. The vehicle was followed to North River Road south of Mequon Road where it pulled to the side of the road. Case agents received an alert that the concealed compartments inside the Cube had been opened. Case agents attempted to conduct a traffic stop of the Cube at which time the vehicle struck a law enforcement vehicle and fled at a high rate of speed. Eventually, the Cube crashed at the intersection of West County Line Road and North Wakefield Court, Bayside, Wisconsin. Both occupants of the vehicle fled and evaded capture. Case agents believe, based on the investigation to date, that CORONEL-VEGA was the driver of the Cube and Daniel RODRIGUEZ-LARA was the front passenger. A search of the vehicle revealed a pillow case on the floor of the backseat which contained 14 of the facsimile kilogram-shaped packages that were previously hidden in the concealed compartment

21

underneath the front passenger seat. Case agents subsequently arrested Richard CHAVEZ and Daniel RODRIGUEZ-LARA.

47. On June 22. 2021, a Grand Jury in the Eastern District of Wisconsin returned a true bill charging RODRIGUEZ-LARA and CHAVEZ with Conspiracy to Distribute Controlled Substances and Attempted Possession with the Intent to Distribute 5 kilograms or more of cocaine and 400 grams or more of fentanyl. CORONEL-VEGA continues to be sought.

48. On June 29, 2021, case agents interviewed Richard CHAVEZ pursuant to a proffer letter. CHAVEZ stated that he was involved in the shipment of the Nissan Cube from California to Wisconsin. CHAVEZ further stated that RODRIGUEZ-LARA and CORONEL-VEGA also travelled from California to Wisconsin to assist in the delivery of the Nissan Cube. CHAVEZ stated the fentanyl and cocaine in the vehicle were destined for a subject CHAVEZ knows as "Jon" who lives in Mequon, Wisconsin. CHAVEZ described "Jon" as an African-American male 45-50 years old. CHAVEZ identified a photo of Jonte MARSHALL as the subject CHAVEZ knows as "Jon." CHAVEZ also described the location of MARSHALL's residence and pointed out the location on a map. The location identified by CHAVEZ was 8320 West Mourning Dove Court, Mequon, Wisconsin. Case agents are aware this is the residence of Jonte MARSHALL. CHAVEZ stated that within the last year he had arranged the delivery of over 100 kilograms of fentanyl from California to Jonte MARSHALL in Wisconsin. CHAVEZ further stated that MARSHALL had shipped in excess of $3,000,000 in bulk United States currency from Wisconsin to California in the last year as payment for fentanyl received by the MARSHALL DTO.

49. CHAVEZ also provided case agents with the phone number used by MARSHALL to coordinate the delivery of the fentanyl and cocaine seized in Kansas. Court-authorized

22

positional information for that phone showed the phone travelled in tandem with the known phone used by MARSHALL for several days surrounding the expected delivery of the fentanyl and cocaine. Case agents believe this indicates that MARSHALL was carrying the phone during that time period. Case agents believe this further corroborates CHAVEZ's statement that Jonte MARSHALL was the intended recipient of the fentanyl and cocaine. CHAVEZ further identified Jose AISPURO-NIEBLA and Juan AISPURO-NIEBLA as the subjects responsible for arranging prior shipments of fentanyl to MARSHALL and for arranging the shipment of fentanyl and cocaine which was seized in Kansas.

50. On July 22, 2022, at 1:01 p.m., court-authorized positional information for (414) 779-1998 indicated the phone was in close proximity to North Mayfair Road and West North Avenue, Wauwatosa, Wisconsin. A case agent responded to that area in an attempt to locate Jonte MARSHALL. At 1:31 p.m., the case agent located MARSHALL's white 2021 Cadillac Escalade, bearing Wisconsin license plate AND-5667, parked in the parking lot of Best Buy, 2401 North Mayfair Road, Wauwatosa, Wisconsin. These license plates list to Schweiger and Baumann and Jonte MARSHALL. The case agent established surveillance of the vehicle.

51. At 1:49 p.m., the case agent observed Jonte MARSHALL walk from the entrance of Best Buy toward the Escalade. MARSHALL was accompanied by two Hispanic males. MARSHALL entered the driver's seat and the two males entered the front and rear seats on the passenger side. MARSHALL drove the vehicle out of the parking lot and drove across the street into the parking lot of Mayfair Mall. The case agent temporarily lost sight of the vehicle at 1:54 p.m. At 1:59 p.m., the case agent located the Escalade driving east in a parking aisle just south of the Tokyo Hut restaurant. The Escalade then drove north in the parking lot and parked near a mall

23

entrance just north of Potbelly Sandwich Shop. The case agent again lost sight of the vehicle temporarily. When visual surveillance was re-established, the vehicle was unoccupied.

52. On August 18, 2022, the case agent obtained surveillance video from Best Buy from July 22, 2022. The video shows MARSHALL and the two Hispanic males enter the store at 12:43 p.m. MARSHALL and the two males did no actual shopping while inside the store. They walked to an area of the store where they had conversation for several minutes. One of the Hispanic males appeared to be translating for the other. Whenever a customer or Best Buy employee came near MARSHALL and the males, they would relocate to a different part of the store and continue their conversation. This happened several times for approximately one hour. Case agents believe, based on the investigation to date and several nonverbal indicators observed on the surveillance, that MARSHALL and the males were involved in a negotiation. Case agents believe this negotiation involved the drug trafficking and money laundering activities of the MARSHALL DTO. MARSHALL and the males left the store at 1:48 p.m. and were observed driving back to the Mayfair Mall parking lot in MARSHALL's Cadillac. On September 15, 2022, case agents showed still photos from the Best Buy surveillance video to a Richard CHAVEZ who identified one of the males who met with MARSHALL as Jose AISPURO-NIEBLA, the subject who arranged the shipment of fentanyl and cocaine to MARSHALL which was seized in Kansas. Case agents believe the fact that MARSHALL was observed meeting with AISPURO-NIEBLA in the Milwaukee area in July 2022 indicates that MARSHALL is still involved in narcotics trafficking with AISPURO-NIEBLA.

24

**Execution of Federal Search and Arrest Warrants for**

**MARSHALL DTO Members and Locations**

53.     On October 31, 2022, the Honorable Stephen Dries, United States Magistrate Judge in the Eastern District of Wisconsin, signed search warrants authorizing the search of several locations associated with the Jonte MARSHALL DTO.  These locations included MARSHALL's former residences at 1929 S. 97th Street, West Allis, WI and 1931 S 97th St., West Allis, WI; a business owned by MARSHALL at 7836 N. Faulkner Rd., Milwaukee, WI; MARSHALL's current residence at 8320 W. Mourning Dove Ct., Mequon, WI; a suspected stash house at 11946 W. Mill Rd., #25, Milwaukee, WI; and Safe Deposit Box # 2313 at Educator's Credit Union, 10811 W Park Place, Milwaukee, WI.  On November 8, 2022, a Federal Grand Jury returned a true bill indicting Richard CHAVEZ, Jonte MARSHALL, Shomari HOOPER, Lemonda WARD, Oscar RAMIREZ-RIVERA, and Mirna MATA-TORRES for charges related to a conspiracy to distribute fentanyl and cocaine and money laundering.  The search and arrest warrants were executed on November 9, 2022.

54.     During a search of 1929 S. 97th St., West Allis, WI, a former residence of MARSHALL, case agents located the following items in the northwest bedroom:

- a blue 2 GB SD card (**Device A**) was  located in a Nikon Coolpix L110 Camera;
- a white Apple iPhone (**Device B**) was seized from the top left drawer of the dresser along the south wall; and
- a silver Apple iPhone (**Device C**) in a black case was seized from a Michael Koers purse that was hanging on a hook in the closet.

25

55.     During a search of 1931 S. 97th St., West Allis, WI, a former residence of MARSHALL, case agents located a Lexar 32 GB flash drive (**Device D**) in the master bedroom.

56.     During a search of 7836 N Faulkner Rd., Milwaukee, WI, a business owned by MARSHALL, case agents located the following items in a white trailer parked inside of the mechanical/maintenance garage:

- a black Motorola Android cell phone (**Device E**);

- a black and silver Samsung Android Cell Phone, bearing IMEI: 354308086937132, (**Device F**);

- a Black and gray WIKO Android cell phone (**Device G**);

- a Black LG Android Cell Phone IMEI: 355292-10-314690-2 (**Device H**); and

- a silver LG Android cell phone (**Device I**).

57.     During a search of 8320 W. Mourning Dove Ct., Mequon, WI, MARSHALL was located in the residence and was taken into custody.  Two handguns were recovered from the residence.  Approximately $169,395 worth of jewelry was also located in the residence and was seized as being proceeds of drug trafficking.  MARSHALL's 2021 Cadillac Escalade, valued at more than $90,000 was also located at the residence and seized.   During a search of the Escalade, a dark blue AT&T cell phone (**Device J**) was located on the front seat of the vehicle and was seized.  A gray cell phone (**Device K**) was located in a handbag in the rear seat and was also seized. During the search of the residence, case agents located a black iPhone (**Device L**), belonging to Jonte MARSHALL, on the bedside table in the master bedroom.  During a subsequent inventory search of the Cadillac Escalade on November 18, 2022, case agents located a second AT&T cellular phone (**Device M**) in the center console of the vehicle.

26

58.     During a search of 11946 W. Mill Rd. #25, Milwaukee, WI, case agents located approximately 19 kilograms of a substance that initially tested positive for fentanyl, but based on the investigation to date is believed to be cocaine; approximately 4.5 kilograms of a substance that tested positive for cocaine; $121,000 in bulk United States currency; approximately $330,530 worth of jewelry; and paraphernalia associated with the distribution of fentanyl and cocaine.  A black Alcatel cell phone (**Device N**) was located in the kitchen.  Three vehicles were located in the underground garage at this location, a Honda Accord, a Nissan Juke, and a Buick Skylark.  Prior investigation indicated that the Juke was believed to contain concealed compartments beneath the front driver and passenger seats. An examination of the Honda revealed similar concealed compartments.  A search of the Nissan Juke revealed the hidden compartments.  The compartment beneath the front passenger seat contained $300,050 in United States currency wrapped in rubber bands and encased in vacuum-sealed packaging.  A subsequent inventory search of the Honda Accord revealed approximately 28 kilograms of cocaine in the trunk of the vehicle.  An inventory search of the Buick Skylark revealed 23 kilograms of fentanyl, 23 kilograms of cocaine, and $260,220 in United States currency.

59.     During a search of Safe Deposit Box # 2313 at Educator's Credit Union, 10811 W Park Place, Milwaukee, WI, case agents located $80,000 in bulk United States currency wrapped in rubber bands.

60.     During the execution of the arrest warrant for Shomari HOOPER at 3431 N. 107th St., Wauwatosa, WI, HOOPER refused to come to the door.  Members of the United States Marshals Service Great Lakes Fugitive Task Force located HOOPER hiding in the basement and took him into custody.  Case agents also located two Apple cellular phones (**Device O** and **Device**

27

**P**) in HOOPER's pants. Task Force Members observed large amounts of paraphernalia used to package and prepare narcotics for distribution in the residence. On November 9, 2022, the Honorable Nancy Joseph, United States Magistrate Judge, signed a search warrant authorizing the search of 3431 N. 107th St., Wauwatosa, WI. During a search of the residence and vehicles at that location, case agents located over 200 grams of fentanyl, over 60 grams of cocaine, three handguns, materials used to package and prepare narcotics for distribution, and over $10,000 worth of jewelry.

61.     The **Devices** described above were seized by case agents and processed into secure DEA evidence storage. The items remain in the same condition as when they were seized. The items are currently located at the Drug Enforcement Administration Milwaukee District Office, 4725 West Electric Avenue, West Milwaukee, WI 53219. Case agents believe that Jonte MARSHALL, Shomari HOOPER, and other members of the MARSHALL DTO have used these cellular phones and other data storage devices to facilitate drug trafficking and evidence of drug trafficking may likely be stored and recorded on the **Devices**.

62.     Through affiant's training, experience, and discussions with other experienced law enforcement officers, affiant is familiar with the ways in which drug traffickers and money launderers conduct their unlawful trade, including their methods of distribution, their use of communication devices, their use of coded communications to conduct their transactions, the employment of counter surveillance, their use of false or fictitious identities, and their use of various forms of electronic devices to store and/or conceal illegal activity.

63.     Based upon my training and experience, affiant knows that individuals involved in drug trafficking and money laundering frequently use cellular telephones to maintain contact and

28

arrange transactions with their sources and customers of and co-conspirators in the distribution of controlled substances and money laundering. Affiant has also found it very common for crime suspects to use their cellular telephones to communicate aurally or via electronic message in "text" format with individuals whom they purchase, trade, or otherwise negotiate to obtain illegal drugs.

64. Based on my training and experience, affiant is aware that individuals involved in trafficking controlled substances and money laundering often possess multiple cellular devices to compartmentalize their illegal activity and to avoid law enforcement detection.

65. Based upon my training and experience, affiant believes it is common for crime suspects who possess illegal controlled substances to often take or cause to be taken photographs and other visual depictions of themselves, their associates, and the illegal controlled substances and proceeds of drug trafficking. Furthermore, affiant believes it is common for these photographs and visual depictions to be kept and maintained on their cellular devices.

66. Based upon the facts described above, to include (1) my knowledge of and experience confirming the prolific use of electronic devices to facilitate the possession and trafficking of controlled substances and money laundering; (2) Jonte MARSHALL, Shomari HOOPER, Lemonda WARD, Oscar RAMIREZ-RIVERA, Mirna MATA-TORRES, Daniel RODRIGUEZ-LARA, and Richard CHAVEZ have been arrested and criminally charged in connection to a multi-year conspiracy involving the distribution of large amounts of fentanyl and cocaine; (3) to date the investigation has resulted in the seizure of approximately 111 kilograms of cocaine, 39 kilograms of fentanyl, $1.44 million in United States currency, over $500,000 in jewelry, and seven vehicles; and (3) fourteen cellular phones and two data storage devices were recovered during the execution of search warrants, arrest warrants, and inventory searches related

29

to members of the MARSHALL DTO.  There is probable cause to believe that a search of the information contained within the above described **Devices** will produce evidence of a crime, namely evidence related to the possession and trafficking of controlled substances and money laundering.

67. The **Devices** are currently in storage at the Drug Enforcement Administration Milwaukee District Office, 4725 West Electric Avenue, West Milwaukee, WI 53219.  In my training and experience, I know that the **Devices** have been stored in a manner in which their contents are, to the extent material to this investigation, in substantially the same state as they were when the **Devices** first came into the possession of DEA.

## TECHNICAL TERMS

68. Based on my training and experience, I use the following technical terms to convey the following meanings:

    a. Wireless telephone:  A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals.  These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones.  A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone.  In addition to enabling voice communications, wireless telephones offer a broad range of capabilities.  These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet.  Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

    b. Digital camera: A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film.  Digital cameras use a variety of fixed

30

and removable storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader. Removable storage media include various types of flash memory cards or miniature hard drives. Most digital cameras also include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.

c. Portable media player: A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video, or photographic files. However, a portable media player can also store other digital data. Some portable media players can use removable storage media. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can also store any digital data. Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

d. GPS: A GPS navigation device uses the Global Positioning System to display its current location. It often contains records the locations where it has been. Some GPS navigation devices can give a user driving or walking directions to another location. These devices can contain records of the addresses or locations involved in such navigation. The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth. Each satellite contains an extremely accurate clock. Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers. These signals are sent by radio, using specifications that are publicly available. A GPS antenna on Earth can receive those signals. When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

e. PDA: A personal digital assistant, or PDA, is a handheld electronic device used for storing data (such as names, addresses, appointments or notes) and utilizing computer programs. Some PDAs also function as wireless communication devices and are used to access the Internet and send and receive e-mail. PDAs usually include a memory card or other removable storage media for storing data and a keyboard and/or touch screen for entering data. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can store any digital data. Most PDAs run computer software, giving

31

them many of the same capabilities as personal computers. For example, PDA users can work with word-processing documents, spreadsheets, and presentations. PDAs may also include global positioning system ("GPS") technology for determining the location of the device.

f. Tablet: A tablet is a mobile computer, typically larger than a phone yet smaller than a notebook, that is primarily operated by touching the screen. Tablets function as wireless communication devices and can be used to access the Internet through cellular networks, 802.11 "wi-fi" networks, or otherwise. Tablets typically contain programs called apps, which, like programs on a personal computer, perform different functions and save data associated with those functions. Apps can, for example, permit accessing the Web, sending and receiving e-mail, and participating in Internet social networks.

g. IP Address: An Internet Protocol address (or simply "IP address") is a unique numeric address used by computers on the Internet. An IP address is a series of four numbers, each in the range 0-255, separated by periods (e.g., 121.56.97.178). Every computer attached to the Internet computer must be assigned an IP address so that Internet traffic sent from and directed to that computer may be directed properly from its source to its destination. Most Internet service providers control a range of IP addresses. Some computers have static—that is, long-term—IP addresses, while other computers have dynamic—that is, frequently changed—IP addresses.

h. Internet: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

69. Based on my training, experience, and research, I know that the **Devices** have the capabilities that allow them to serve as a wireless telephone, digital camera, portable media player, GPS navigation device, and PDA, and all have the ability to access the internet. In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the devices.

32

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

70.     Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time.  Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device.  This information can sometimes be recovered with forensics tools.

71.     *Forensic evidence.*  As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the **Devices** were used, the purpose of their use, who used them, and when.  There is probable cause to believe that this forensic electronic evidence might be on the **Devices** because:

   a.  Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

   b.  Forensic evidence on a device can also indicate who has used or controlled the device.  This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

   c.  A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

   d.  The process of identifying the exact electronically stored information on a storage medium that are necessary to draw an accurate conclusion is a dynamic process.  Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators.  Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves.  Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

33

e. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

72. *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the **Devices** consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the **Devices** to human inspection in order to determine whether it is evidence described by the warrant.

73. *Manner of execution.* Because this warrant seeks only permission to examine devices already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## CONCLUSION

74. I submit that this affidavit supports probable cause for a search warrant authorizing the examination of the **Devices** described in Attachment A to seek the items described in Attachment B.

34

1.     The property to be searched is described as follows:

    a.     a blue 2 GB SD card, hereinafter referred to as "**Device A**;"

    b.     a white Apple iPhone, hereinafter referred to as "**Device B**;"

    c.     a silver Apple iPhone, hereinafter referred to as "**Device C**;"

    d.     a Lexar 32 GB flash drive, hereinafter referred to as "**Device D**;"

    e.     a black Motorola Android cell phone, hereinafter referred to as "**Device E**;"

    f.     a black and silver Samsung Android Cell Phone, bearing IMEI: 354308086937132, hereinafter referred to as "**Device F**;"

    g.     a Black and gray WIKO Android cell phone, hereinafter referred to as "**Device G**;"

    h.     a Black LG Android Cell Phone IMEI: 355292-10-314690-2, hereinafter referred to as "**Device H**;"

    i.     a silver LG Android cell phone, hereinafter referred to as "**Device I**;"

    j.     a dark blue AT&T cell phone, hereinafter referred to as "**Device J**;"

    k.     a gray cellular phone, hereinafter referred to as "**Device K**;"

    l.     a black iPhone belonging to Jonte MARSHALL, hereinafter referred to as "**Device L**;"

    m.     a second AT&T cellular phone, hereinafter referred to as "**Device M**;

    n.     a black Alcatel cell phone, hereinafter referred to as "**Device N**; and

35

o. two Apple cellular phones, hereinafter referred to as "**Device O"** and **"Device P."**

2. **Devices A** through **P**, collectively the "**Devices**," are currently at the Drug Enforcement Administration Milwaukee District Office, 4725 West Electric Avenue, West Milwaukee, WI 53219.

This warrant authorizes the forensic examination of the **Devices** for the purpose of identifying the electronically stored information described in Attachment B.

36

**ATTACHMENT B**

1.      All records on the **Devices** described in Attachment A that relate to violations of Title 21, United States Code, Sections 841(a)(1), 843(b) and 846, and Title 18, United States Code, Sections 1956 and 1957, and involve Jonte MARSHALL, Shomari HOOPER, Lemonda WARD, Oscar RAMIREZ-RIVERA, Mirna MATA-TORRES, Daniel RODRIGUEZ-LARA, Richard CHAVEZ, Humberto CORONEL-VEGA, and others not yet identified, including, but not limited to:

  a.  lists of customers and related identifying information;

  b.  types, amounts, and prices of drugs trafficked and money laundered as well as dates, places, and amounts of specific transactions;

  c.  any information related to sources of drugs and money and co-conspirators (including names, addresses, phone numbers, or any other identifying information);

  d.  any information recording schedule or travel;

  e.  all bank records, checks, credit card bills, account information, and other financial records;

  f.  Photographs and/or videos depicting possession of drugs or money;

  g.  Any evidence related to either the ownership, purchase, or possession of drugs, money, or other assets; and

  h.  Records of Internet activity, including browser history, search terms that the user entered into any Internet search engine, and records of user-typed web addresses.

2.      Evidence of user attribution showing who used or owned the **Devices** at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history.

1

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

This warrant authorizes a review of electronic storage media and electronically stored information seized or copied pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, the DEA may deliver a complete copy of the seized or copied electronic data to the custody and control of attorneys for the government and their support staff for their independent review.

2